UNARCO INDUSTRIES, INC., Plaintiff-Appellee, *v.* FREDERICK MANU-FACTURING CO., INC., Defendant-Appellant.

Third District   No. 81—716

Opinion filed September 14, 1982.

James R. Morrison, of McConnell, Kennedy, Quinn & Johnston, of Peoria, for appellant.

George D. Browning and John A. Kendrick, both of Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

Defendant Frederick Manufacturing Co., a foreign corporation, brings this interlocutory appeal from an order entered in the circuit court of Peoria County denying its motion to quash personal service of summons in Missouri.

Plaintiff manufactures radio towers at its plant in Peoria County, Illinois, and for the last 12 years has regularly purchased from defendant Frederick certain component parts called clevises. Plaintiff filed a suit in the circuit court of Peoria County alleging that in

March of 1979 plaintiff issued to defendant a purchase order for 1600 "C" clevises and 1000 "D" clevises, specifying that the C and D clevises were to be manufactured from 1018 steel; that defendant shipped the C and D clevises to plaintiff in Peoria in April; that plaintiff thereafter sold these clevises to its customers to be used as a component part of towers to be erected; and that the clevises were not made from 1018 steel as specified but were made from 1215 steel and were not of sufficient strength to withstand the pressure placed on them as components of towers. The complaint contained three counts. Count I alleged that the clevises were unreasonably dangerous, that the towers into which they were incorporated were damaged because they were diminished in value, and that plaintiff was forced to recall all C and D clevises from its customers at substantial cost. Count II asserted a breach of implied warranty of merchantable quality, and count III asserted a breach of implied warranty that the clevises were fit for the particular purpose required by plaintiff. Plaintiff prayed for $626,877 in damages under each count.

After summons was served upon defendant's vice-president in Jackson County, Missouri, defendant appeared specially in this cause and, pursuant to section 20 of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 20), moved to quash the service of summons upon the grounds that defendant is not amenable to Illinois process. Defendant also filed affidavits from its president which indicated that the clevises in question were manufactured in Missouri; that defendant does no business in Illinois; that defendant's principal and only place of business is in Kansas City, Missouri; the defendant has no facilities, employees or agents in Illinois; that defendant is not licensed or registered to do business in Illinois; that no officer, employee or agent of defendant went to Illinois either to negotiate the sale, or perform the contract, or for any other purpose; that defendant did nothing in Illinois in connection with this transaction; that defendant received a purchase order at its office in Kansas City, Missouri, from plaintiff; that defendant delivered the clevises to plaintiff F.O.B. Kansas City, meaning of course that the clevises were delivered to plaintiff at Kansas City, not at Peoria; and that no representative of defendant has ever visited plaintiff's facilities in Illinois for any reason. Business records furnished by plaintiff and defendant indicate that the business relationship between plaintiff and defendant originated with a letter of inquiry from plaintiff which defendant answered by mail with quotation of prices, delivery dates, etc. Thereafter, plaintiff regularly ordered clevises from defendant over a 12-year period prior to this action.

After hearing arguments of counsel, the trial court denied defendant's motion to quash the summons, and then granted defendant's motion to permit an interlocutory appeal pursuant to Supreme Court Rule 308 (73 Ill. 2d R. 308). The trial court certified the question on appeal as follows: "Is defendant subject to personal jurisdiction in Illinois in this case?" This court ultimately granted leave to appeal.

■ Defendant contends that it did not submit to the jurisdiction of Illinois courts under section 17 of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 17), which provides:

> "(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:
>
> (a) The transaction of any business within this State;
>
> (b) The commission of a tortious act within this State * * *."

Although plaintiff's complaint alleges that defendant was a Missouri corporation "doing business in the State of Illinois" as a jurisdictional fact, there are no allegations of any facts that would constitute the doing of business in Illinois. Defendant has had no employees, officers or agents in Illinois at any time in connection with this sale; it performed no acts in Illinois; it did not even advertise or solicit business in Illinois. This entire transaction originated with plaintiff, and the goods purchased were delivered to plaintiff in Missouri. A very similar case is that of *Woodfield Ford, Inc. v. Akins Ford Corp.* (1979), 77 Ill. App. 3d 343, 395 N.E.2d 1131, where a sale of cars by a Georgia dealer to an Illinois dealer did not bring the Georgia seller within the jurisdiction of the Illinois courts under the "long-arm statute." In *Woodfield* the sale of cars was initiated by the plaintiff buyer both by telephone and personal visit to Georgia; defendant's entire performance under the contract took place in Georgia; payment and delivery occurred in Georgia; and there were no contacts amounting to the conduct of business in Illinois. The court held that Illinois lacked personal jurisdiction of a breach of contract action under section 17(1)(a), noting that to hold otherwise would be to permit plaintiff to "lure" the nonresident defendant into the jurisdiction of Illinois. (Accord, *Wood v. Moody-McMaster* (1982), 107 Ill. App. 3d 116, 437 N.E.2d 373.) Only the acts of defendant can be considered in determining whether business was transacted in Illinois. (*Servo Instruments, Inc. v. Fenway Machine Co.* (1980), 92 Ill. App. 3d 509, 415 N.E.2d 34; *Chicago Film Enterprises v. Jablanow* (1977), 55 Ill. App. 3d 739, 371

N.E.2d 161.) We conclude, therefore, that the defendant here did not submit to the jurisdiction of Illinois under subsection (a) of section 17(1).

Plaintiff insists that jurisdiction may also be had in this case under subsection (b) of the statute, which provides that a party submits to the jurisdiction of Illinois when it commits a tortious act in Illinois. This provision has been the subject of much judicial attention in recent years, beginning with the case of *Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 176 N.E.2d 761, where an Illinois resident brought a negligence action for injuries received when a hot water heater exploded in Illinois. Defendant manufactured a safety valve in Ohio which was sold to another company which incorporated the valve into hot water heaters in Pennsylvania, and eventually the hot water heaters were sold to the consumer in Illinois. The court held that a tortious act is committed for purposes of jurisdiction where the last event takes place which is necessary to render the actor liable—*i.e.*, the place of injury.

The rationale of the *Gray* decision was utilized in a recent product liability action, *Connelly v. Uniroyal, Inc.* (1979), 75 Ill. 2d 393, 389 N.E.2d 155, where a motorist brought suit in Illinois against a Belgian tire manufacturer and others for personal injuries incurred when a tire failed during use in Illinois. The court held that distribution in Illinois of the tire manufacturer's products rendered the manufacturer amenable to process under section 17(1)(b). The court quoted *Gray* for the general proposition that it is not unjust to hold a corporation answerable in Illinois for damage caused by defects in its products where it elects to sell its products for ultimate use in Illinois.

■■ Without extending our discussion of the principles involved, we believe it sufficient to say that defendant would be subject to Illinois jurisdiction for a tort action arising out of a defect in its products which are sold for use in Illinois. Plaintiff insists that count I of its complaint sets out a tort action framed in terms of product liability. To quote the complaint:

> "8. That as a direct and proximate result of one or more of the aforementioned unreasonably dangerous conditions of the C and D clevises, the towers into which the C and D clevises were incorporated were damaged in that the towers were diminished in value by said incorporation ***."

Plaintiff asserts as damages the cost of replacement material, freight, labor, engineering and administrative time, and the loss of good will and profits. All of these items amount to economic loss, not physical injury, and there is no allegation of any type of accident or damage to

any person or other property.

The Illinois Supreme Court in *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443, has held that economic losses caused by qualitative defects, where only the defective product itself is damaged, cannot be recovered under a theory of strict liability in tort or under any other tort theory. "Our conclusion that qualitative defects are best handled by contract, rather than tort, law applies whether the tort theory involved is strict liability or negligence. Tort theory is appropriately suited for personal injury or property damage resulting from a sudden or dangerous occurrence \*\*\*. The remedy for economic loss, loss relating to a purchaser's disappointed expectations due to deterioration, internal breakdown or nonaccidental cause, on the other hand, lies in contract." 91 Ill. 2d 69, 86, 435 N.E.2d 443, 450.

*Moorman* is perhaps an extension of the ruling in *Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431, 427 N.E.2d 847, which denied personal jurisdiction under section 17(1)(b) for misconduct occurring outside Illinois which caused a financial loss to plaintiff residing in Illinois. (In *Green* the tortious acts complained of involved the misappropriation of funds in Texas which had as a consequence the reduction of corporate assets in Illinois. The court stated that the injury was complete in Texas.)

In view of the *Moorman* decision, it is clear that the complaint in this case does not allege the commission of any tortious act within the meaning of section 17(1)(b). In *Mroczynski v. McGrath* (1966), 34 Ill. 2d 451, 216 N.E.2d 137, the supreme court construed that "tortious act" as used in this section to mean an act leading to recovery in tort. Since there is no proposed recovery in tort in this action for the economic loss incurred by plaintiff as a result of the alleged manufacturing defects in the clevises, then there was no "tortious act" by defendant occurring in Illinois and it follows that defendant is not amenable to Illinois jurisdiction.

Accordingly, the summons served upon defendant in Missouri should be quashed. We reverse the order of the circuit court of Peoria County, remand the cause, and direct that defendant's motion be granted.

Reversed and remanded with directions.

STOUDER and HEIPLE, JJ., concur.